## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

BENJAMIN S. RICH,

    Plaintiff,

    v.

BRAD NEIDIG,

    Defendant.

CIVIL ACTION NO. 3:24-cv-02269

(SAPORITO, J.)

## ORDER

Benjamin S. Rich, formerly incarcerated at SCI-Coal Township, proceeds on an Eighth Amendment claim against defendant Brad Neidig, a nurse at the prison. Rich claims that Neidig was deliberately indifferent to his chest pain and related symptoms allegedly caused by mold in the prison. Neidig now moves for summary judgment. (Doc. 25). Because the record shows that Rich was treated by other providers during the relevant time, and the record of Neidig's prior treatment of Rich does not show deliberate indifference, Neidig is entitled to summary judgment.

## I.    BACKGROUND

As relevant here, Rich's complaint (Doc. 1) alleges that in July and August 2024, at SCI-Coal Township, he experienced "severe respiratory issues, chest pain, and headaches," which he attributes to black mold at

the prison. Black mold was allegedly present on Rich's mattress, cell ceiling, windows, vent, and in the showers. On July 12, 2024, defendant Neidig[1] allegedly informed Rich that "black mold throughout the facility was likely causing his symptoms." Despite this warning, "no action was taken to address the mold or [Rich's] medical needs."

Upon screening of this complaint (and several contemporaneously filed complaints) pursuant to 28 U.S.C. § 1915A, several unrelated claims and defendants were dismissed, and Rich was permitted to proceed on an Eighth Amendment claim of deliberate indifference to serious medical needs against Neidig. *See* (Docs. 4, 5).

## II.    LEGAL STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a

---

[1] Neidig was identified in the complaint as "Nurse Brad."

reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251-52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a *prima facie* showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that prima facie showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477

U.S. at 331. Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A).

## III.  MATERIAL FACTS

The summary judgment record indicates as follows: On September 20, 2023, at SCI-Coal Township, Neidig treated Rich[2] after an "unplanned use of force" in which correctional officers deployed OC spray into Rich's cell. Rich complained of a cough and difficulty breathing. Neidig took Rich's vital signs, "decontaminated" his eyes, and found his lungs and chest to be normal on examination. Neidig instructed Rich to follow up if his breathing worsened. *See* (Doc. 26-8 at 1-9).

On October 8, 2023, Neidig treated Rich for a "new onset" complaint of chest pain, with a severity of 4 out of 10. Neidig took Rich's vitals, found him in "no acute distress," and directed that Rich be seen the next day

---

[2] The record indicates (and the parties do not dispute) that during the period at issue, Rich was known within the Department of Corrections as Samuel Guillaume. For clarity, we refer to Rich by his current name.

for a sick call. (Doc. 26-9). An ECG was "normal" except for "sinus rhythm with occasional premature ventricular complexes."[3] (Doc. 26-10). At a sick call the following day, a different nurse examined him, reviewed his test results, and determined that his chest pain was likely "anxiety-related." *See* (Doc. 26-11).

It is undisputed that Rich made respiratory complaints to medical staff on July 12, 2024; however, the parties dispute whether Neidig was involved. In a declaration, Rich attests that "on or about" that date, Neidig "responded to [Rich's] housing unit after [Rich] complained of chest pain and shortness of breath and personally transported [Rich] to the medical department." Neidig discussed "possible environmental causes, including mold exposure within the facility." (Doc. 33-2 at 1). Rich's medical records indicate that on that date, Rich made similar

---

[3] For context, we note that "premature ventricular complexes" refers to a common type of irregular heartbeat: "Most people with premature ventricular contractions . . . don't have heart disease and won't need treatment." *See* Mayo Clinic, "Premature ventricular contractions (PVCs)," https://www.mayoclinic.org/diseases-conditions/premature-ventricular-contractions/diagnosis-treatment/drc-20376762 (last visited July 27, 2026); *see also* National Library of Medicine, "Premature Ventricular Complex," https://www.ncbi.nlm.nih.gov/books/NBK547713/ (last visited July 27, 2026). However, our analysis of Rich's medical treatment is limited to the record submitted by the parties.

complaints to nurse Amy Vereshack, who examined him, assessed possible rhinitis, and scheduled him for a follow-up sick call. *See* (Doc. 26-2).

At a follow-up sick call on July 16, nurse Youlanda Knight-Powell examined Rich, assessed rhinitis and possible bronchitis, and prescribed prednisone, Claritin, and a nasal spray. (Doc. 26-3). On July 28, Rich reported to medical complaining of coughing and chest pain, and was assessed to have a fever. The following day, nurse Brian Davis examined Rich, finding that he had chest pain and coughing, but no fever. Davis prescribed an "albuterol inhaler and Z-pack." (Docs. 26-4, 26-5). Neither party has presented evidence relating to medical care in August 2024; Rich was ultimately released from DOC custody on September 13, 2024.

## IV. DISCUSSION

A plaintiff can pursue an Eighth Amendment claim by showing that he had a serious medical need, that the defendant was deliberately indifferent to that need, and that the deliberate indifference caused harm. *See Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023). Courts have found deliberate indifference "in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical

treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

However, an Eighth Amendment medical care claim, like any other claim under Section 1983, requires the defendant's personal involvement in the specific violation itself. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). A prison medical defendant's prior treatment of a plaintiff does not establish that defendant's personal involvement in later care provided by other staff. *See, e.g., Quarles v. Bontempo*, No. 2:23-CV-1601, 2025 WL 1822675, at *6 (E.D. Pa. July 2, 2025); *Peraza v. Helton*, No. 3:12-CV-1306, 2016 WL 6442254, at *13 (M.D. Pa. Nov. 1, 2016).

For purposes of this motion, we accept Rich's attestations that he was seen by Neidig on July 12, 2024[4]; that he complained of chest pain

---

[4] Rich attests that Neidig "personally treated [Rich] on multiple occasions prior to July 12, 2024, including responding to complaints of chest pain and breathing difficulty." (Doc. 33-2, ¶ 4). Although Rich believes that this creates a material dispute of fact, it is entirely consistent with the medical records showing that Neidig treated him on September 20, 2023, and October 8, 2023. To the extent these "multiple occasions" were intended as a reference to interactions with Neidig prior to July 12 that are undocumented in the records, Rich has not described

*(continued on next page)*

and shortness of breath to Neidig during this interaction; and that Neidig described "possible environmental causes, including mold exposure." Regardless, the record does not support an inference of deliberate indifference by Neidig.

Rich's theory is that Neidig should have "escalated [Rich's] condition for further diagnostic testing or physician evaluation." *See* (Doc. 33 at 2-5). However, the record shows that Rich was repeatedly examined and treated by medical staff on July 12 and in the days that followed. Even if Neidig made some unspecified error in addressing Rich's complaints on July 12, the treatment by other providers forecloses any inference that Neidig was to blame for any issues that followed. Rich does not describe any error in his treatment after July 12, and Neidig would not have had personal involvement in any such error.

Given these conclusions, Rich's factual disputes about other aspects of the case are immaterial. *See* Fed. R. Civ. P. 56(a); *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit . . . [preclude] summary judgment. Factual disputes that are irrelevant

---

those interactions or explained how Neidig's conduct during those interactions supports an inference of deliberate indifference.

or unnecessary will not be counted."). For example, Rich objects to Neidig's deposition testimony that he "did not recall" treating Rich, which Rich believes is "false," but Neidig's recollection is irrelevant given the lack of evidence showing deliberate indifference. Rich's evidence indicates that he may have been prescribed more medication than reflected in his medical records[5], but he offers no evidence that any of these medication decisions were attributable to Neidig.

Because Neidig is entitled to summary judgment on the merits, we need not address his arguments regarding qualified immunity.

## V.    CONCLUSION

Accordingly, **IT IS HEREBY ORDERED THAT**:

1.    Neidig's motion for summary judgment (Doc. 25) is **GRANTED**. The Clerk is directed to enter **JUDGMENT** in favor of Neidig and against Rich.

2.    The Clerk is directed to mark this case as **CLOSED**.

Dated: July 28, 2026                    *s/Joseph F. Saporito, Jr.*
                                        JOSEPH F. SAPORITO, JR.
                                        United States District Judge

---

[5] *Compare* (Doc. 33-2, ¶¶ 16-21; Docs. 33-4, 33-7) *with* (Doc. 26-6).